## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

RACHEL REBAKAH MOORE,

       Plaintiff,

vs.                                  CASE NO. 3:12-cv-118-J-TEM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.[1]

_____

## ORDER AND OPINION

This case is before the Court on Plaintiff's complaint (Doc. 1), seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claim for social security income ("SSI") benefits.  Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated May 9, 2012 (Doc. 16).  The Commissioner has filed a transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number).  For the reasons set out herein, the Commissioner's decision is **AFFIRMED.**

### I. Procedural History

Plaintiff filed an application for SSI benefits, alleging disability beginning April 1, 2004 (Tr. 198-200).  Plaintiff's application was denied initially and upon reconsideration (Tr.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

86-87, 117-19, 124-26).  Plaintiff requested an administrative hearing, which was held on May 5, 2011 (Tr. 48-85).  The administrative law judge ("ALJ") issued a decision denying Plaintiff's applications on May 27, 2011 (Tr. 28-47).  Plaintiff filed a request for review, which the Appeals Council denied on December 12, 2011 (Tr. 1-6).  Plaintiff filed the instant action on February 1, 2012 (Doc. 1).

## II. Summary of the ALJ's Decision

A plaintiff may be entitled to disability benefits under the Social Security Act if she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected either to result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 416.920[2]; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  First, if a claimant is engaging in substantial gainful activity, she is not disabled.  20 C.F.R. § 416.920(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 416.920(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 416.920(d).  Fourth, if a claimant's impairments do not prevent her from performing her past relevant work, she is not disabled.  20 C.F.R. § 416.920(f).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national

---

[2] Unless otherwise specified, all references to 20 C.F.R. will be to the 2012 edition.

economy, then she is disabled.  20 C.F.R. § 416.920(g).  A plaintiff bears the burden of

persuasion through step four, but the burden shifts to the Commissioner at step five.

*Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

In the instant case, at step one of the sequential evaluation process, the ALJ found

that Plaintiff had not engaged in substantial gainful activity since June 11, 2009, the

application date (Tr. 33).  At step two, the ALJ found Plaintiff suffered from the following

severe impairments: bipolar disorder; anxiety; borderline intellectual functioning; and a

history of drug abuse.  *Id.*  At step three, the ALJ determined Plaintiff did not have an

impairment or combination of impairments that meets or medically equals one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  At step four, the ALJ found

Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all

exertional levels, with the following nonexertional limitations:

> the claimant must avoid climbing ladders, ropes and scaffolds, and
> dangerous work hazards such as unprotected heights and exposed
> machinery.  The claimant is mentally limited to routine, repetitive, low stress
> work that does not require more than occasional work interactions with co-
> worker's [sic], supervisors and the general public.  The claimant is limited to
> no more than fourth grade level reasoning, math and language skills.

(Tr. 36).  The ALJ found that Plaintiff had no past relevant work (Tr. 40).  At step five, the

ALJ found that there were other jobs existing in significant numbers in the national

economy that Plaintiff could perform, including production assembler, production tester

sorter, warehouse checker, dry cleaning bagger and press operator (Tr. 41).  Therefore,

the ALJ found that Plaintiff was not under a disability since June 11, 2009, the date the

application was filed.  *Id.*

### III. Standard of Review

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established . . . and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. Although the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's

4

decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability and is responsible for furnishing or identifying medical and other evidence regarding the claimed impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is the plaintiff's burden to provide the relevant medical and other evidence establishing disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

## IV. Analysis

Plaintiff raises two arguments on appeal. First, Plaintiff argues the ALJ failed to adequately account for Plaintiff's moderate difficulties in maintaining concentration, persistence and pace. Second, Plaintiff argues the ALJ failed to articulate legitimate reasons for discrediting the opinion of consultative examiner Dr. Sherry Risch.

### A. Summary of medical opinion evidence

#### i. Dr. Peter Knox, M.Ed., Psy.D.

Plaintiff met with Dr. Peter Knox, a clinical psychologist, for a consultative exam on June 20, 2008 (Tr. 388-93). Dr. Knox noted Plaintiff's mood appeared dysphoric and she had a blunted affect (Tr. 390). There was no indication of tangential or circumstantial

thinking, and Plaintiff could relate information in a rational, coherent, and sequential fashion. *Id.* With respect to concentration, Plaintiff was able to count backward from twenty to one with no errors, could recite the alphabet, and could count by three from one to thirty-seven with no major problems (Tr. 390-91). Plaintiff was oriented as to time, place, person and purpose (Tr. 391). Her recent and remote memory recall was intact. *Id.* Dr. Knox noted there was no significant issues in work-related mental activities or in concentration and persistence. *Id.* Dr. Knox diagnosed bipolar I disorder and polysubstance abuse in remission, and assigned Plaintiff a GAF of 60.[3] *Id.*

Plaintiff met with Dr. Knox for a second exam on March 5, 2010 (Tr. 465-70). Dr. Knox's findings were similar from his previous exam. Dr. Knox noted Plaintiff's mood appeared euthymic and she had a pleasant affect (Tr. 467). There was no indication of tangential or circumstantial thinking, and Plaintiff could relate information in a rational, coherent, and sequential fashion. *Id.* With respect to concentration, Plaintiff was able to count backwards from twenty to one with no errors, could recite the alphabet, and could count by three from one to thirty-seven with no major problems. *Id.* Plaintiff was oriented as to time, place, person and purpose. *Id.* Her recent and remote memory recall was intact. *Id.* Dr. Knox noted there was no significant issues in work-related mental activities or in concentration and persistence (Tr. 468). Dr. Knox diagnosed bipolar I disorder controlled with medication and assigned a GAF of 60 (Tr. 469).

---

[3] The Global Assessment of Functioning Scale ("GAF") was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF of 51-60 is defined as manifesting "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 34 (4th ed., American Psychiatric Assoc. 2000) (hereinafter DSM-IV).

### ii.  Dr. Elizabeth M. Michalec, Ph.D.

Plaintiff visited Dr. Michalec for a psychological evaluation on August 10, 2009 (Tr. 438-45).  With regard to attention and concentration, Plaintiff reported she is able to count and perform simple calculations, and she successfully completed serial threes from twenty (Tr. 442).  With regard to recent and remote memory skills, Plaintiff was able to recall three of three objects immediately and two of three objects after a five-minute delay.  *Id.*  She was only able to recall one of four series of digits administered forward and unable to recall any of the three series administered backward.  *Id.*  Dr. Michalec noted Plaintiff estimated her intellectual functioning to be in the fair or below average range.  *Id.*  Plaintiff's insight appeared limited and her judgment appeared fair (Tr. 442-43).  Plaintiff reported she had no interference with activities of daily living except she had difficulty with concentration at times (Tr. 443).  Dr. Michalec found Plaintiff

> can follow and understand simple directions and instructions, but reported having trouble remaining instructions.  She can perform simple tasks independently, but has some difficulties maintaining attention and concentration.  She is able to maintain a regular schedule, but that depends on the unpredictability of her symptoms of a history of bipolar disorder.  She could learn new tasks, by her report, if given a demonstration, time to practice, and coaching with someone who understands her disability.  She is not able to perform complex tasks independently, by her report.  She said that her ability to make appropriate decisions varies, again, with her psychiatric symptoms varying.

*Id.*  Dr. Michalec diagnosed adjustment disorder with mixed anxiety and depressed mood, superimposed upon a history of bipolar I, controlled with medications (Tr. 444).  Dr. Michalec recommended vocational training that accommodates for Plaintiff's unpredictable history of bipolar disorder.  *Id.*  Plaintiff's prognosis was fair given her motivation and strength with needed assistance, guidance and coaching.  *Id.*

### iii. Dr. Anjali Pathak, M.D.

On September 22, 2010, Plaintiff was referred by Vocational Rehabilitation to Dr. Pathak for a psychiatric evaluation (Tr. 523-25).  Dr. Pathak noted Plaintiff's memory for recent events was intact but her memory for remote events was diminished (Tr. 525).  Her judgment and insight were faire, and she was of average intelligence.  Id.  Dr. Pathak diagnosed bipolar disorder, depression, and a history of polysubstance abuse, and assigned a GAF of 60.  Id.  Dr. Pathak found "no psychiatric contraindications" to Plaintiff participating in the vocational rehabilitation program.  *Id.*

### iv. Dr. Jerry Valente, Ph.D.

On September 24, 2010, Plaintiff was evaluated by Dr. Valente, a licensed psychologist, on request of Vocational Rehabilitation (Tr. 512-21).  Upon testing, Dr. Valente found Plaintiff's general cognitive ability to be within the borderline range of intellectual functioning, and her overall thinking and reasoning abilities exceeded those of only approximately three percent of individuals her age (Tr. 513).  Plaintiff's ability to sustain attention, concentrate and exert mental control was in the borderline range and she performed better than approximately three percent of her peers in this area (Tr. 514, 521).  Dr. Valente diagnosed reading disorder, mathematics disorder, bipolar disorder not otherwise specified, and generalized anxiety disorder, and assigned a GAF of 60 (Tr. 520).  Dr. Valente found Plaintiff to be an appropriate candidate for vocational rehabilitation services.  *Id.*

### v. Dr. Sherry Risch, Ph.D.

On May 2, 2011, Plaintiff was evaluated by Dr. Risch, a licensed psychologist, on request of Plaintiff's counsel (Tr. 527-52).  Plaintiff reported she was taking pain medication

8

after she injured her right ankle in a trolley accident (Tr. 527-28).  She told Dr. Risch she was "floating" as a result of the medication (Tr. 528).  Upon testing, Dr. Risch found Plaintiff had some difficulties with sustained mental control and working memory (Tr. 531).  Plaintiff was a poor historian but "there were no significant deficits noted with long or short term memory."  *Id.*  Dr. Risch diagnosed bipolar disorder, rule out learning deficits, history of polysubstance abuse in total remission over six years, personality disorder not otherwise specified with borderline traits, and assigned a GAF of 60 (Tr. 532).  Dr. Risch stated Plaintiff "has the cognitive resources with which to learn basic job rules and follow simple instructions," but she "would not be able to learn complex job rules or follow detailed instructions."  *Id.*  Plaintiff was limited in her reading and writing skills.  Plaintiff's excessive talkativeness could interfere with her appropriately interacting with coworkers and supervisors and with appropriately working with the public.  *Id.*  Plaintiff seemed fairly stable with her medications, however she could have problems in the future if she does not do well with her medications.  *Id.*  Dr. Risch noted, "Given her mood disturbance, she could have limitations with persistence and pace."  *Id.*  Dr. Risch encouraged Plaintiff to continue with her pscyhiatric medication management and noted Plaintiff appeared "to be well management with her current medications" (Tr. 533).

Dr. Risch also completed mental residual function capacity assessment (Tr. 537-38) and psychiatric review technique forms (Tr. 540-51), both dated May 2, 2011.  In the mental RFC assessment, Dr. Risch indicated Plaintiff was markedly limited in her ability to: understand and remember very detailed instructions; ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary

9

tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and accept instructions and respond appropriately to criticism from supervisors (Tr. 537-38).  Plaintiff was moderately limited in her ability to: remember locations and work-like procedures; sustain an ordinary routine without special supervision; make simple work-related decisions; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others.  *Id.*  In the psychiatric review technique form, Dr. Risch indicated Plaintiff had moderate restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and marked repeated episodes of decompensation (Tr. 550).

### vi.  Dr. Michael Zelenka, Ph.D.

On October 8, 2008, Dr. Zelenka completed a Mental Residual Functional Capacity Assessment (Tr. 394-97) and a Psychiatric Review Technique (Tr. 398-410).  Dr. Zelenka found Plaintiff was moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; and interact appropriately with the general public (Tr. 394-95).  Dr. Zelenka noted Plaintiff could only carry out simple instructions, and she "retains adequate mental ability to carry out simple instr[uctions] and relate appropriately in a routine work setting" (Tr. 396).  Dr. Zelenka found Plaintiff had mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; mild

difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation (Tr. 408).

### vii. Dr. Thomas Conger, Ph.D.

Dr. Conger completed a Psychiatric Review Technique (Tr. 446-59) and Mental Residual Functional Capacity Assessment (Tr. 460-62) on September 17, 2009.   Dr. Conger found Plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation (Tr. 456).   Dr. Conger noted Plaintiff has a history of treatment for bipolar disorder with positive results, and she "demonstrates an overall adequate Mental Status" (Tr. 458).   Dr. Conger judged Plaintiff to be "mentally capable of performing routine tasks independently" and found no indication of a mental impairment that met or equaled any listing.   *Id.*   Dr. Conger found Plaintiff moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors and in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 461).   Dr. Conger concluded Plaintiff is "capable of performing routine tasks on a sustained basis and is judged to have adequate understanding and adaptation abilities" (Tr. 462).

### viii. Dr. Eric Wiener, Ph.D.

Dr. Wiener completed a Psychiatric Review Technique (Tr. 471-84) and Mental Residual Functional Capacity Assessment (Tr. 485-87) on April 10, 2010.  Dr. Wiener found Plaintiff had moderate restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation (Tr. 481).   Dr. Wiener found

11

Plaintiff was moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting (Tr. 485-86).  Dr. Wiener concluded Plaintiff "seemed mentally capable of independently performing routine tasks in a low demanding work environment" (Tr. 487).  He stated she "might occasionally need a work environment with only brief interactions with others" and "might need a work environment with few changes."  *Id.*

**B. Whether the ALJ accounted for Plaintiff's moderate difficulties in maintaining concentration, persistence and pace**

To evaluate a claim of disability based on a mental impairment, the ALJ must follow a special procedure, often referred to as the Psychiatric Review Technique, that is set out at 20 C.F.R. § 404.1520a.  *See Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005). According to the regulation, the ALJ must first evaluate whether the claimant has a medically determinable mental impairment.  If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairments in accordance with paragraph (c) of that section and must record the findings as set out in paragraph (e) of that section.  20 C.F.R. § 404.1520a(b)(2).  Paragraph (c) identifies "four broad functional areas" to be considered, including: "[a]ctivities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3).  For the first three functional areas, an impairment may be

rated as: none, mild, moderate, marked, and extreme. For the fourth functional area, episodes of decompensation, a four point scale is utilized: none, one or two, three, four or more. 20 C.F.R. § 404.1520a(c)(4). Impairments rated as "none" or "mild" in the first three categories and "none" in the fourth category are generally considered not to be severe. 20 C.F.R. § 404.1520a(d)(1).

The four functional areas summarized by application of the Psychiatric Review Technique are broad categories to assist the ALJ in determining at steps two and three which of the claimant's mental impairments are severe, and then in determining the mental functional limitations on the claimant's ability to perform basic work activities. *See* 20 C.F.R. § 404.1520a(c); SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). Determination of the functional limitations is a "highly individualized" and fact-specific determination. *Id.* Work-related mental activities include the ability and aptitude to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. 20 C.F.R. § 404.1521(b). The category of concentration, persistence or pace refers to the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. While limitations in this category may best be observed in work settings, limitations may also be assessed through clinical examination or psychological testing that evaluates short-term memory and/or the completion of tasks that must be finished within established time limits. *Id.*

In accordance with the requirements of 20 C.F.R. § 404.1520a(c)(4), the ALJ found Plaintiff had mild difficulties in activities of daily living; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence or pace; and no episodes of decompensation (Tr. 34).  With respect to the category of concentration, persistence or pace, the ALJ stated "the claimant has demonstrated a basic ability to maintain a schedule and perform activities in a timely manner, establish relationships with others, but at times may need reminders."  *Id.*  The ALJ then determined Plaintiff's RFC. The RFC is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments.  20 C.F.R. § 404.45(a).  The focus of this assessment is on the doctors' evaluations of the claimant's condition and the medical consequences thereof.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  In evaluating a claimant's RFC, the ALJ is obliged to consider all of the claimant's impairments.  *Id.*  In this case, the ALJ ultimately found Plaintiff had the RFC to perform the full range of work but with nonexertional limitations, including limitations to "routine, repetitive, low stress work that does not require more than occasional work interactions with co-worker's, supervisors and the general public," and "no more than fourth grade level reasoning, math and language skills" (Tr. 36).

Plaintiff argues the ALJ did not adequately address Plaintiff's difficulties in *maintaining* attention, concentration, persistence and pace for extended periods, and the assessed limitations do not account for such.  The Commissioner responds that substantial evidence, including the medical opinions of Dr. Zelenka, Dr. Conger, Dr. Weiner, and Dr. Michalec, supports the ALJ's finding regarding Plaintiff's limitations in maintaining concentration, persistence or pace.

14

In *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1180 (11th Cir.

2011), the Eleventh Circuit held that an ALJ may not generally account for a claimant's

limitations in maintaining concentration, persistence, or pace by restricting the hypothetical

question posed to a VE to simple, routine tasks, or unskilled work.  *Id.*  The Court found:

> In this case, the ALJ determined at step-two that [claimant's] mental
> impairments caused a moderate limitation in maintaining concentration,
> persistence, and pace. But the ALJ did not indicate that medical evidence
> suggested [claimant's] ability to work was unaffected by this limitation, nor did
> he otherwise implicitly account for the limitation in the hypothetical . . . .
>
> Because the ALJ asked the vocational expert a hypothetical question that
> failed to include or otherwise implicitly account for all of [the claimant's]
> impairments, the vocational expert's testimony is not "substantial evidence"
> and cannot support the ALJ's conclusion that [the claimant] can perform
> significant numbers of jobs in the national economy.

*Id.*  Thus, because the ALJ in *Winschel* did not indicate that the medical evidence

suggested the claimant could still work despite limitations in maintaining concentration,

persistence or pace, nor did the ALJ otherwise implicitly account for the limitation in the

hypothetical question, the Eleventh Circuit remanded the case for the ALJ to pose a

hypothetical question to the vocational expert which specifically accounted for the

claimant's moderate limitations in maintaining concentration, persistence, and pace.  *Id.*

In *Scott v. Commissioner of Social Security,* 495 Fed. Appx. 27 (11th Cir. 2012),[4] the

Eleventh Circuit more recently clarified:

> [W]hen medical evidence demonstrates that a claimant can engage in
> simple, routine tasks or unskilled work despite limitations in concentration,
> persistence, and pace, courts have concluded that limiting the hypothetical
> to include only unskilled work sufficiently accounts for such limitations.
> Additionally, other circuits have held that hypothetical questions adequately

---

[4] Unpublished opinions are not considered binding authority; however, they may be
cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

>account for a claimant's limitations in concentration, persistence, and pace
>when the questions otherwise implicitly account for these limitations.

*Id.* (quoting *Winschel*, 631 F.3d at 1180–81). The court held that the ALJ correctly found

the medical evidence showed Scott could complete simple tasks on a regular basis and

adequately accounted for his moderate limitations in concentration, persistence, or pace

by limiting his hypothetical to work that would require "low stress, simple, unskilled; one,

two or three step instructions."  *Id.*  Thus, where the medical evidence demonstrates that

a claimant can still engage in simple, routine tasks or unskilled work despite limitations in

maintaining concentration, persistence, or pace, or the ALJ otherwise accounts for such

limitations in the hypothetical question to the vocational expert, the ALJ has adequately

addressed such limitations.  *Id.; see also Washington v. Comm'r of Soc. Sec.,* 2013 WL

150237, at *2 (11th Cir. 2013) ("Because the evidence showed that Washington could

perform simple, routine tasks, the ALJ's hypothetical question to the VE which included this

limitation adequately addressed Washington's [moderate] limitations as to concentration,

persistence, or pace."); *Jarrett v. Comm'r of Soc. Sec.,* 422 Fed. Appx. 869, 871–72 (11th

Cir. 2011) ("[A]n ALJ's hypothetical restricting the claimant to simple and routine tasks

adequately accounts for restrictions related to concentration, persistence and pace where

the medical evidence demonstrates that the claimant retains the ability to perform the tasks

despite concentration deficiencies."); *Dawson v. Comm'r of Soc. Sec.,* Case No. 6:11–cv–1

128–Orl–31KRS, 2012 WL 1624267, at * 2 (M.D. Fla. May 9, 2012) ("*Winschel* did not hold

that limitations in concentration, persistence, or pace can never be accounted for by a

functional limitation to performing simple, routine tasks or unskilled work."); *cf. Richter v.

Comm'r of Soc. Sec.*, 379 Fed. Appx. 959, 962 (11th Cir. 2010) (holding ALJ's failure to

include all of plaintiff's impairments in the hypothetical posed to VE was not harmless were the hypothetical did not implicitly account for plaintiff's deficiencies in concentration, persistence, and pace, and there was no medical evidence that plaintiff retained ability to perform simple, repetitive and routine tasks).

Here, the ALJ specifically found "[t]he claimant's moderate paragraph "B" findings in concentration, persistence or pace, are associated with residual functional capacity limitations of routine, repetitive, low stress work" (Tr. 39).  Citing to the opinions of Dr. Zelenka, Dr. Conger, Dr. Wiener, and Dr. Risch, the ALJ explained:

> State psychological experts have examined the file and opined that the claimant retains adequate mental ability to carry out simple instructions and relate appropriately in a routine work settings [sic] (Ex. 3F/3), but may have some social difficulties, and is capable of performing routine tasks on a sustained basis, maintain adequate understanding, and adapt (Ex. 9F).  She also was considered capable of independently performing tasks in a low demand work environment, but may need only brief interactions with others and few changes (Ex. 12F).  These limitations are based on a review of the claimant's entire record at that time, and are pretty consistent with the description of the claimant's work abilities by Dr. Risch in Exhibit 20F [mental RFC assessment form] that describe a much more functional person than Dr. Risch's specific work related limitations outlined in Exhibit 21F [psychiatric review technique form].

*Id.*  Additionally, the ALJ noted Plaintiff testified her concentration is good (Tr. 36, 74); Dr. Pathak "opined that the claimant had no psychiatric contraindications to participating in vocational rehabilitation" (Tr. 37); and Dr. Risch stated Plaintiff "had the cognitive resources to learned basic job rules and follow simple instructions, but she would not be able to learn complex job rules or follow detailed instructions" (Tr. 38).  The evidence relied upon by the ALJ is sufficient to support the conclusion that, despite moderate limitations in concentration, persistence or pace, Plaintiff can perform routine, repetitive, low stress work.

Thus, the limitations assessed by the ALJ sufficiently accounted for Plaintiff's moderate limitations in concentration, persistence and pace because the medical evidence in the record demonstrated that Plaintiff retained the ability to perform simple, routine, repetitive, low stress work.  Accordingly, the Court finds no error.

**C. Whether the ALJ properly discounted the opinion of consulting examiner Dr. Risch**

Plaintiff argues the ALJ failed to articulate legitimate reasons for not crediting the opinion of Dr. Risch.  The Commissioner responds that the ALJ evaluated Dr. Risch's opinion and properly declined to accord it significant weight because it was inconsistent with her own examination and other substantial evidence of record.

Dr. Risch is not a treating source; she is a consulting doctor who conducted a single examination of Plaintiff.  Therefore, her opinion is not entitled to controlling weight.  *See* 20 C.F.R. § 416.927(c).  Nonetheless, the ALJ is required to evaluate every medical opinion he/she receives, regardless of the source.  20 C.F.R. § 404.1527(d).  The ALJ is also required to "state with particularity the weight he gave the different medical opinions and the reasons therefor."  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986)).  The weight afforded a medical source's opinion depends upon the evidence the medical source presents to support her opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors.  20 C.F.R. § 416.927(c).  The ALJ may reject the opinion of any medical source when it is inconsistent with the evidence.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).

In the instant case, the ALJ stated he gave little weight to the examination and non-standard mental residual functional capacity assessment and psychiatric review technique forms completed by Dr. Risch because "the assessment was based upon incomplete evidence and reflected examination findings that were inconsistent with the specific limitations outlined in [the psychiatric review technique form]" (Tr. 39).   Throughout her opinion, the ALJ elaborated why she did not give significant weight to Dr. Risch's assessment.  The ALJ noted Dr. Risch was only provided the 2008 exam by Dr. Knox and the 2009 exam by Dr. Michalec to review (Tr. 38).  The ALJ noted the limitations described by Dr. Risch in her evaluation report were inconsistent with the specific work limitations provided by Dr. Risch after the evaluation (Tr. 39).  The ALJ stated, "Dr. Risch assigned the claimant a GAF rating of 60, generally associated with moderate work related limitations, and Dr. Risch noted the claimant had the ability to perform simple, basic instructions, yet Dr. Risch also opined the claimant had marked limitations in most job related areas and met the requirements of a mental functioning listing."  *Id.*  The ALJ also noted Dr. Risch's opinion conflicted with the opinions of other examining and non-examining medical sources.   The ALJ ultimately found Plaintiff capable of performing routine, repetitive, low stress work, and noted these limitations were consistent with the other opinions of record and the description of Plaintiff's work abilities found in the conclusion of Dr. Risch's evaluation report.

The Court finds substantial evidence supports the ALJ's decision to afford little weight to the opinion of Dr. Risch.  The ALJ's RFC assessment is "based upon all of the relevant evidence." 20 C.F.R. § 416.945(a)(1).  Here, the ALJ discussed, considered, and accorded weight to the several and varied medical opinions of record.  The ALJ discussed

Dr. Risch's evaluation in detail and concluded some of her findings were inconsistent with her examination notes and with other evidence of record.  It is clear the ALJ considered Dr. Risch's opinion in accordance with 20 C.F.R. § 416.92.  Where consulting doctors provide contrary RFC assessments, it is the responsibility of the ALJ to resolve the conflicting evidence.  *Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984); *see also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The [Commissioner], and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly.").  The Court must refrain from reweighing the evidence or substituting its own judgment for that of the ALJ.  *Martin v. Sullivan*, 894 F.2d 15020, 1529 (11th Cir. 1990).  Accordingly, the Court finds no error in the ALJ's evaluation of Dr. Risch's opinion.

**D. Whether the ALJ considered the side effects of Plaintiff's medication**

Buried within her argument that the ALJ failed to properly evaluate Dr. Risch's opinion, Plaintiff argues the ALJ's failure to evaluate the side effects of Plaintiff's medication constitutes an independent basis for error.  Plaintiff testified she takes Lithium everyday for her bipolar disorder but does not take the full dosage of Lithium because it makes her "float" like she is on drugs (Tr. 66, 70).[5]  However, Plaintiff also testified her medicine helps her because it balances her and calms her down (Tr. 70).

Plaintiff argues the ALJ failed to analyze the effect of Plaintiff's "floating" on her functioning.  Plaintiff is correct that the ALJ must consider a claimant's subjective

---

[5] Plaintiff told Dr. Risch that, in addition to Lithium, she was prescribed Percocet, Lortab and Tramadol for pain and that she was "floating" (Tr. 528).  It was unclear to Dr. Risch whether Plaintiff took all three pain medications at the same time.  *Id.*

symptoms, including the effectiveness and side effects of any medications, when determining whether a claimant's impairments limit her ability to work.   20 C.F.R. § 404.1529(c)(3)(iv); *Walker v. Comm'r of Soc. Sec.*, 404 Fed. Appx. 362, 366 (11th Cir. 2010).   However, while the ALJ has an obligation to develop a full and fair record, the burden remains on claimant to prove she is disabled, including introducing evidence supporting her claim that her symptoms (including any side effects from medication) make her unable to work.   *Id.*   A mere statement by the plaintiff that a medication causes a side effect is insufficient to impose a duty upon an ALJ to elicit testimony and make findings regarding the side effects of medication, particularly where, as here, the record does not disclose any doctor's concerns about side effects.   *See Burgin v. Comm'r of Soc. Sec.*, 420 Fed. Appx. 901, 904 (11th Cir. 2011) ("Where a represented claimant raises a question as to the side effects of medications, but does not otherwise allege the side effects contribute to the alleged disability, we have determined the ALJ does not err in failing to inquire further into possible side effects."); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (holding where plaintiff did not complain about the side effects of medications, other than an isolated mention that one might be responsible for causing headaches, and where record did not disclose any doctor's concerns about side effects, substantial evidence supported the determination that the side effects did not present a significant problem); *Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985) (where plaintiff was represented at hearing and did not alleged that side effects contributed to her disability other than a statement that her medication made her drowsy, "the ALJ's failure to inquire further into possible side effects did not deprive [plaintiff] of a meaningful opportunity to be heard").   The ALJ noted

Plaintiff's testimony that her medication makes her "float" (Tr. 36).  The ALJ concluded Plaintiff's "statements concerning the intensity, persistence and limiting effect of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 37).  This finding encompassed Plaintiff's testimony about the side effects of her medication.  *See Walker*, 404 Fed. Appx. at 367 ("The ALJ found that although [plaintiff's] medically determinable impairments could reasonably be expected to produce the symptoms she alleged, [plaintiff's] statements concerning the intensity, persistence and limiting effects of her symptoms were 'not entirely credible,' a finding that encompassed her testimony about her side effects.").  Nothing in Plaintiff's testimony or the medical record suggested that her "floating" was severe enough to be disabling either alone or in combination with her other impairments.  Accordingly, the Court finds no error.

## V. Conclusion

Upon due consideration, the undersigned finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence.  As neither reversal nor remand is warranted in this case, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.  Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida, this 27<u>th</u> day of March, 2013.

THOMAS E. MORRIS
United States Magistrate Judge

Copies to: All counsel of record

23